**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

MESOBLAST INTERNATIONAL SÀRL, a Swiss company,

Plaintiff,

v.

CAPRICOR THERAPEUTICS, INC., a Delaware corporation; and CAPRICOR, INC., a Delaware corporation,

Defendants.

C.A. No. _____

**JURY TRIAL DEMANDED**

**COMPLAINT FOR PATENT INFRINGEMENT AND
DECLARATORY JUDGMENT OF PATENT INFRINGEMENT**

Plaintiff Mesoblast International Sàrl ("Mesoblast" or "Plaintiff"), by its attorneys, alleges as follows for its Complaint for Patent Infringement and for a Declaratory Judgment of Patent Infringement against Capricor Therapeutics, Inc. and Capricor, Inc. (collectively, "Capricor" or "Defendants"):

**NATURE OF THE ACTION**

1. This is an action for patent infringement and for a declaratory judgment of infringement of United States Patent Nos. 8,637,004, 11,708,560, and 12,616,722 (collectively, "Asserted Patents"). This action arises out of Defendants' current and/or imminent unauthorized manufacture, use, sale, offer to sell within the United States, and/or importation into the United States of Defendants' cardiosphere-derived cell product developed under the name "Deramiocel" (also known as "CAP-1002" and referred to interchangeably throughout) for the treatment of Duchenne muscular dystrophy ("DMD"). These activities infringe the Asserted Patents.

1

## THE PARTIES

2.      Plaintiff Mesoblast International Sàrl is a company organized under the laws of Switzerland and is a member of the Mesoblast group of companies. Mesoblast International Sàrl is the owner by assignment of the Asserted Patents.

3.      Upon information and belief, Defendant Capricor Therapeutics, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business at 10865 Road to the Cure, Suite 150, San Diego, California 92121. Upon information and belief, Capricor Therapeutics, Inc. is the public parent company and registrant for the Capricor group of companies and directs and controls the development and commercialization of Deramiocel, including by entering into the commercialization and distribution arrangements for Deramiocel in the United States.

4.      Upon information and belief, Defendant Capricor, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business at 10865 Road to the Cure, Suite 150, San Diego, California 92121, and is a wholly owned subsidiary of Capricor Therapeutics, Inc. Upon information and belief, Capricor, Inc. is the operating entity that developed, and that manufactures or directs the manufacture of, Deramiocel. This Complaint refers to Capricor Therapeutics, Inc. and Capricor, Inc. collectively as "Capricor."

5.      Upon information and belief, each of the Defendants acts in concert with, and as the agent, alter ego, and/or under the direction and control of, the other with respect to the development, manufacture, and commercialization of Deramiocel (CAP-1002). To the extent any infringing act alleged herein is performed by one Defendant, it is performed for the benefit of and at the direction of, or in active concert with, the other Defendant. Plaintiff alleges the acts of

"Capricor" against each Defendant, jointly and severally, and in the alternative against whichever Defendant performs the act in question.

6. Upon information and belief, Capricor is in the business of developing, manufacturing, marketing, and selling pharmaceutical and biologic products, including cell-therapy products. Upon information and belief, Capricor developed Deramiocel and already has and/or will imminently commercially manufacture, use, offer to sell, sell, and/or import Deramiocel throughout the United States and in this judicial district.

## JURISDICTION AND VENUE

7. This civil action for patent infringement arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*, and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

9. This Court has personal jurisdiction over the Defendants at least by virtue of the fact that Defendants are incorporated in the State of Delaware, conduct business in the State of Delaware, have availed themselves of the rights and benefits under Delaware law, and have engaged in substantial and continuous contacts in the State of Delaware.

10. Upon information and belief, Capricor, directly or indirectly through its affiliates and agents, markets and sells, or intends to market and sell, pharmaceutical and biologic products throughout the United States and in this judicial district, including Deramiocel (CAP-1002).

11. Venue is proper in this District and before this Court pursuant to 28 U.S.C. § 1400(b) because each Defendant resides in this District. Each Defendant is incorporated in the

3

State of Delaware and therefore resides in this District for purposes of 28 U.S.C. § 1400(b). Venue is also proper under 28 U.S.C. § 1391 to the extent applicable to the declaratory-judgment claims.

## THE ASSERTED PATENTS

12.      United States Patent No. 8,637,004 (the "'004 Patent"), titled "Purified mesenchymal stem cell compositions and methods of purifying mesenchymal stem cell compositions" and directed to pharmaceutically acceptable compositions comprising purified mesenchymal stem cells (sometimes referred to as "MSC") and mesenchymal stem cell aggregates, was duly and legally issued by the United States Patent and Trademark Office. The '004 Patent establishes solutions to a long-felt need for non-naturally occurring mesenchymal stem cell compositions that are purified and exhibit reduced aggregation. *See, e.g.,* '004 Patent at 4:18-25. Plaintiff owns the '004 Patent. The '004 Patent is fully maintained and is valid and enforceable. A copy of the '004 Patent is attached as Exhibit 1.

13.      United States Patent No. 11,708,560 (the "'560 Patent"), titled "Enhanced MSC preparations" and directed to mesenchymal stem cell preparations comprising cultured human mesenchymal stem cells expanded from a cryopreserved in-process intermediate and having a defined antigen and activity profile, was duly and legally issued by the United States Patent and Trademark Office. Plaintiff owns the '560 Patent. The '560 Patent solves a need for uniform preparations of sufficient cells that maintain a stable phenotype with reproducible therapeutic action. *See, e.g.,* '560 Patent at 3:51-58. The '560 Patent is fully maintained and is valid and enforceable. A copy of the '560 Patent is attached as Exhibit 2.

14.      United States Patent No. 12,616,722 (the "'722 Patent"), titled "Treatment of immune disorders" and directed to compositions comprising genetically unmodified stem cells

expressing angiopoietin-1 ("Ang-1") and a defined range of Vascular Endothelial Growth Factor ("VEGF"), was duly and legally issued by the United States Patent and Trademark Office. The '722 Patent provides culture processes capable of producing non-naturally occurring stem cell compositions expressing desirable levels of Ang-1 and VEGF without genetic modification. *See, e.g.,* '722 Patent at 2:7-11; 30:16-31:30. The '722 Patent is owned by Plaintiff. The '722 Patent is fully maintained and is valid and enforceable. A copy of the '722 Patent is attached as Exhibit 3.

## BACKGROUND

### A. MESOBLAST'S MESENCHYMAL STEM CELL INNOVATION AND DEVELOPMENT AND THE ASSERTED PATENTS

15.     Plaintiff (along with its related entities) is a global leader in the development of allogeneic cellular medicines using its proprietary mesenchymal lineage cell technology platform. For more than two decades, Plaintiff and its predecessors have been at the forefront of the research and development of mesenchymal stem cell and mesenchymal lineage precursor cell technologies. Through sustained investment in that research, Plaintiff has developed a substantial body of patented innovations directed to mesenchymal stem cell compositions and preparations that are useful for treating a number of diseases and conditions. The Asserted Patents reflect those innovations.

16.     Plaintiff has also translated its extensive research and development efforts, including those embodied by the Asserted Patents, into life-saving treatments. For example, in December 2024 the FDA approved Plaintiff's RYONCIL® (remestemcel-L-rknd), an allogeneic bone marrow-derived mesenchymal stromal cell therapy, for the treatment of steroid-refractory

acute graft versus host disease in pediatric patients two months of age and older.[1] RYONCIL was the first mesenchymal stromal cell therapy of any kind approved by the FDA for any indication and remains the only such product approved for that pediatric population. In April 2026, the FDA also granted Mesoblast clearance to proceed directly to a registrational clinical trial evaluating RYONCIL in DMD—the same indication for which Capricor has sought approval of Deramiocel (CAP-1002).[2]

17.     Plaintiff and its predecessors have devoted substantial resources to research and development directed to MSC-based and mesenchymal lineage precursor cell-based therapies, and to the compositions, preparations, and methods protected by the Asserted Patents. The Asserted Patents reflect innovations directed to, among other things, purified MSC compositions containing controlled cell aggregates, MSC preparations meeting defined antigen and activity profiles, and genetically unmodified stem cell compositions expressing specified angiogenic factors.

### B. CAPRICOR'S INFRINGING PRODUCT: DERAMIOCEL (CAP-1002)

18.     Capricor's website describes Deramiocel (CAP-1002) as comprised of cardiosphere-derived cells, or "CDCs," which the website further describes as an endogenous population of stromal cells derived from cells of transplant-qualified human hearts.

19.     The CDCs comprising Deramiocel (CAP-1002) are a heterogeneous cell population that contains MSCs. The cell-surface-marker expression profile of Capricor's CDCs aligns with

---

[1] U.S. Food & Drug Administration, *FDA approves remestemcel-l-rknd for steroid-refractory acute graft versus host disease in pediatric patients* (Dec. 18, 2024), available at https://www.fda.gov/drugs/resources-information-approved-drugs/fda-approves-remestemcel-l-rknd-steroid-refractory-acute-graft-versus-host-disease-pediatric
[2] Globe Newswire, *Mesoblast Receives IND Clearance from FDA to Directly Proceed to Registrational Trial for Approval of Ryoncil® in Duchenne Muscular Dystrophy* (Apr. 10, 2026), available at https://www.globenewswire.com/news-release/2026/04/10/3272039/0/en/mesoblast-receives-ind-clearance-from-fda-to-directly-proceed-to-registrational-trial-for-approval-of-ryoncil-in-duchenne-muscular-dystrophy-correction.html

the ISCT criteria for MSCs (CD105+, CD73+, CD90+, CD45-, CD14-, CD11b-), the CDCs are cultured under conditions favorable to MSC growth, and the CDCs are capable of multipotent differentiation and of engraftment and differentiation *in vivo*. *See*, *e.g.*, U.S. Pat. No. 9,884,076 to Capricor, Figure 19 (showing the expression levels of CDC lines).

20.     Deramiocel (CAP-1002) and/or its manufacture practices the inventions claimed in the Asserted Patents: Deramiocel (CAP-1002) comprises a pharmaceutically acceptable composition of purified MSCs containing MSC aggregates of a defined size distribution; Deramiocel (CAP-1002) comprises a mesenchymal stem cell preparation expanded from a cryopreserved in-process intermediate and meeting the defined antigen and activity profile claimed; and Deramiocel (CAP-1002) comprises genetically unmodified stem cells expressing angiopoietin-1 and vascular endothelial growth factor within the claimed range. Attached as Exhibit 4 (Exhibits 4A, 4B, 4C) are exemplary claim charts mapping an exemplary claim for each of the Asserted Patents to Deramiocel (CAP-1002) and/or its manufacture.

### C. CAPRICOR'S INFRINGING COMMERCIAL ACTIVITIES

21.     On information and belief, Defendants are preparing to launch Deramiocel (CAP-1002) for commercial sale in the United States immediately upon FDA approval and have already and presently engaged in substantial commercial manufacturing, inventory, distribution, and launch readiness activities directed toward that launch.

22.     On information and belief, Defendants' Biologics License Application ("BLA") for Deramiocel (CAP-1002) is under active FDA review. On May 12, 2026, Capricor announced that the FDA had accepted its Class 2 BLA resubmission as complete, resumed full review of the BLA, and assigned a Prescription Drug User Fee Act ("PDUFA") target action date of August 22, 2026.

7

Capricor further stated that it "expects labeling discussions to commence soon" and that it is engaged in an "active dialogue" with the FDA. May 12, 2026 Capricor Press Release at 1 (attached hereto as Exhibit 5).

23.     Capricor's May 12 press release described "Commercial Launch Preparations Underway," including:

> The Company's GMP manufacturing facility in San Diego successfully completed an FDA Pre-License Inspection, with all Form 483 observations addressed. The facility is operational and positioned to support initial commercial launch. Second-floor expansion adding additional cleanrooms is well underway, scaling to approximately 2,000–2,500 patients per year, roughly 10,000 doses annually, at full capacity, with full facility validation and FDA approval targeted for the first half of 2027. The Company will begin stockpiling commercial doses once guidance on the label is received. Planning is underway across all critical launch functions, including patient support, market access, reimbursement planning, medical affairs and physician education.

Exhibit 5 at 2–3. In recent litigation with its supplier, Capricor likewise stated that "Commercial-supply manufacturing has begun, and Capricor's patient-support call center is expected to be operational approximately one month before the PDUFA date." *Capricor Therapeutics, Inc.,* v. *NS Pharma, Inc. & Nippon Shinyaku Co., Ltd.*, No. BER-C-000117-26, PI Br. in Supp. of Mot. for Prelim. Inj. at 26 (N.J. Super. Ct. Ch. Div. May 7, 2026) (attached hereto as Exhibit 6).

24.     On May 28, 2026, Capricor announced an expansion of its commercial leadership team as it "advances preparations for the potential launch of Deramiocel." May 28, 2026 Press

Release.[3] The release states that Capricor "have made strategic investments in our commercial readiness capabilities and assembled a highly experienced team to support a thoughtful and sustainable launch strategy for Deramiocel," explaining that the recent hiring of a Chief Commercial Officer "strengthens our ability to prepare for commercialization."

25.     The new Chief Commercial Office at Capricor "will oversee the Company's global commercial organization and launch readiness efforts, including market access, patient support, distribution strategy, and operational planning. Together with his team, he will work to ensure a coordinated and patient-centered approach to execution as the Company advances toward its August 22, 2026 PDUFA date for Deramiocel." May 28, 2026 Release.

26.     To support this commercial team for Deramiocel, Capricor is building out its commercial functionalities and is hiring into numerous positions, including positions dedicated to Commercial Operations, Commercial Analytics, Patient Services, Patient Advocacy, Medical Affairs, and Medical Science Liaison functions. Capricor Therapeutics Job Postings dated June 30, 2026 (attached hereto as Exhibit 7). Those positions are responsible for, among other things, building commercial infrastructure, coordinating launch plans, establishing distribution channels, supporting reimbursement and patient-access programs, and engaging treatment centers and key opinion leaders.[4] Defendants have likewise posted positions relating to warehouse operations, inventory management, manufacturing supervision, quality assurance, and manufacturing scale-up. Upon information and belief, these positions are directed toward the expected commercial

---

[3] Capricor Therapeutics, *Capricor Therapeutics Expands Commercial Leadership Team* (May 28, 2026), available at https://www.capricor.com/investors/news-events/press-releases/detail/345/capricor-therapeutics-expands-commercial-leadership-team

[4] Based on the position descriptions associated with the June 30, 2026 Capricor Therapeutics job postings attached as Exhibit 7.

launch, distribution, marketing, and sale of Deramiocel (CAP-1002) and are not directed toward obtaining FDA approval or generating information for submission to FDA.

27.    Upon information and belief, Defendants expect Deramiocel (CAP-1002) to receive FDA approval on or before the August 22, 2026 PDUFA target action date and have publicly stated that they are actively preparing for commercial launch immediately upon approval. Defendants have further stated that they will begin stockpiling commercial doses upon receipt of FDA label guidance. Given Defendants' stated intention to launch immediately following approval, and upon information and belief, Defendants are already manufacturing Deramiocel (CAP-1002) for the purpose of commercial inventory-build, stockpiling, distribution, and other commercial launch activities necessary to support the expected August 2026 launch.

28.    Defendants' commercial-scale manufacturing expansion, their FDA-inspected facility, their commercial launch-specific hiring, their commercialization and distribution planning, and their express commitment to stockpile commercial doses demonstrate that Defendants are undertaking manufacturing and commercialization efforts directed toward the commercial launch, inventory build, stockpiling, distribution, and sale of Deramiocel in the United States immediately upon approval.

<u>**FIRST CAUSE OF ACTION**</u>
**(Infringement of the '004 Patent)**

29.    Plaintiff realleges and incorporates by reference all of the allegations set forth above as if fully set forth below.

30.    The '004 Patent was duly and legally issued on January 28, 2014 and has not yet expired.

31.    Plaintiff is the owner of all right, title, and interest in the '004 Patent.

32.    Defendants have infringed and are continuing to infringe the '004 Patent, pursuant to 35 U.S.C. § 271(a), (b), and/or (c), by engaging in the commercial manufacture, use, offer to sell, sale, or importation of Deramiocel prior to the expiration of the '004 Patent.

33.    Defendants' commercial manufacture, use, offer to sell, sale, or importation of Deramiocel before the expiration of the '004 Patent will cause Plaintiff injury, entitling Plaintiff to damages and/or other monetary relief.

34.    Deramiocel and/or its manufacture satisfies each element and infringes, either literally or under the doctrine of equivalents, at least claim 1 of the '004 Patent. An exemplary claim chart mapping claim 1 of the '004 Patent to Deramiocel and/or its manufacture is attached as Exhibit 4A.

35.    Capricor also contributes to and/or induces infringement of the '004 Patent. Capricor has knowledge of and is aware of the '004 Patent at least due to the filing of this Complaint and designed and manufactures Deramiocel in a manner that Defendants know infringes the '004 Patent. Furthermore, Capricor has entered into a commercialization and distribution agreement with a third-party supplier under which the supplier has or imminently will sell and/or offer to sell Deramiocel in the United States, thus demonstrating that Defendants contribute to and/or induce its supplier's infringement of the '004 Patent.[5] On information and belief, Deramiocel constitutes a material part of the claimed invention, has no substantial non-

---

[5] Capricor Therapeutics, *Capricor Therapeutics and Nippon Shinyaku Enter Partnership* (Jan. 25, 2022), available at http://capricor.com/investors/news-events/press-releases/detail/22/capricor-therapeutics-and-nippon-shinyaku-enter-partnership

infringing uses, is not a staple article of commerce, and is specially made and adapted for use in an infringing manner.

36.     Plaintiff will be substantially and irreparably harmed if Defendants are not enjoined from infringing the '004 Patent.

37.     Plaintiff has no adequate remedy at law and is entitled to injunctive relief prohibiting Capricor from making, using, offering to sell, and/or selling within the United States, or importing into the United States, Deramiocel, or actively inducing or contributing to the infringement of one or more claims of the '004 Patent, before the expiration of the '004 Patent.

38.     This case is exceptional, and Plaintiff is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

## SECOND CAUSE OF ACTION
### (Infringement of the '560 Patent)

39.     Plaintiff realleges and incorporates by reference all of the allegations set forth above as if fully set forth below.

40.     The '560 Patent was duly and legally issued on July 25, 2023 and has not yet expired.

41.     Plaintiff is the owner of all right, title, and interest in the '560 Patent.

42.     Defendants have infringed and are continuing to infringe the '560 Patent, pursuant to 35 U.S.C. § 271(a), (b), and/or (c), by engaging in the commercial manufacture, use, offer to sell, sale, or importation of Deramiocel prior to the expiration of the '560 Patent.

43. Defendants' commercial manufacture, use, offer to sell, sale, or importation of Deramiocel before the expiration of the '560 Patent will cause Plaintiff injury, entitling Plaintiff to damages and/or other monetary relief.

44. Deramiocel and/or its manufacture satisfies each element and infringes, either literally or under the doctrine of equivalents, at least claim 1 of the '560 Patent. An exemplary claim chart mapping claim 1 of the '560 Patent to Deramiocel and/or its manufacture is attached as Exhibit 4B.

45. Capricor also contributes to and/or induces infringement of the '560 Patent. Capricor has knowledge of and is aware of the '560 Patent at least due to the filing of this Complaint and designed and manufactures Deramiocel in a manner that Defendants know infringes the '560 Patent. Furthermore, Capricor has entered into a commercial supply agreement with a third-party supplier under which the supplier has or imminently will sell and/or offer to sell Deramiocel in the United States, thus demonstrating that Defendants contribute to and/or induce its supplier's infringement of the '560 Patent. On information and belief, Deramiocel constitutes a material part of the claimed invention, has no substantial non-infringing uses, is not a staple article of commerce, and is specially made and adapted for use in an infringing manner.

46. Plaintiff will be substantially and irreparably harmed if Defendants are not enjoined from infringing the '560 Patent.

47. Plaintiff has no adequate remedy at law and is entitled to injunctive relief prohibiting Capricor from making, using, offering to sell, and/or selling within the United States, or importing into the United States, Deramiocel, or actively inducing or contributing to the infringement of one or more claims of the '560 Patent, before the expiration of the '560 Patent.

48.     This case is exceptional, and Plaintiff is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

**THIRD CAUSE OF ACTION**
**(Infringement of the '722 Patent)**

49.     Plaintiff realleges and incorporates by reference all of the allegations set forth above as if fully set forth below.

50.     The '722 Patent was duly and legally issued on May 5, 2026 and has not yet expired.

51.     Plaintiff is the owner of all right, title, and interest in the '722 Patent.

52.     On information and belief, Defendants have infringed and are continuing to infringe the '722 Patent, pursuant to 35 U.S.C. § 271(a), (b), and/or (c), by engaging in the commercial manufacture, use, offer to sell, sale, or importation of Deramiocel prior to the expiration of the '722 Patent.

53.     Defendants' commercial manufacture, use, offer to sell, sale, or importation of Deramiocel before the expiration of the '722 Patent will cause Plaintiff injury, entitling Plaintiff to damages and/or other monetary relief.

54.     Deramiocel and/or its manufacture satisfies each element and infringes, either literally or under the doctrine of equivalents, at least claim 1 of the '722 Patent. An exemplary claim chart mapping claim 1 of the '722 Patent to Deramiocel and/or its manufacture is attached as Exhibit 4C.

55.     Capricor also contributes to and/or induces infringement of the '722 Patent. Capricor has knowledge of and is aware of the '722 Patent at least due to the filing of this

Complaint and designed and manufactures Deramiocel in a manner that Defendants know infringes the '722 Patent. Furthermore, Capricor has entered into a commercial supply agreement with a third-party supplier under which the supplier has or imminently will sell and/or offer to sell Deramiocel in the United States, thus demonstrating that Defendants contribute to and/or induce its supplier's infringement of the '722 Patent. On information and belief, Deramiocel constitutes a material part of the claimed invention, has no substantial non-infringing uses, is not a staple article of commerce, and is specially made and adapted for use in an infringing manner.

56.     Plaintiff will be substantially and irreparably harmed if Defendants are not enjoined from infringing the '722 Patent.

57.     Plaintiff has no adequate remedy at law and is entitled to injunctive relief prohibiting Capricor from making, using, offering to sell, and/or selling within the United States, or importing into the United States, Deramiocel, or actively inducing or contributing to the infringement of one or more claims of the '722 Patent, before the expiration of the '722 Patent.

58.     This case is exceptional, and Plaintiff is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment of Infringement)

59.     Plaintiff realleges and incorporates by reference all of the allegations set forth above as if fully set forth below.

60.     Defendants' current and contemplated manufacture of Deramiocel for commercial sale in the United States, coupled with Defendants' preparations to launch Deramiocel for sale to the domestic marketplace upon receiving FDA approval, create an actual, immediate, and real

15

controversy within the Declaratory Judgment Act that Defendants will directly infringe at least one valid and enforceable claim of the Asserted Patents prior to their expiration. Plaintiff holds the exclusionary rights in the Asserted Patents, and Capricor is preparing to commercially exploit its infringing Deramiocel (CAP-1002) before the expiration of the Asserted Patents without authorization, presenting adverse legal interests of sufficient immediacy and reality to warrant declaratory relief.

61.     A judicial declaration of infringement is necessary and appropriate to resolve this controversy.

62.     Plaintiff will be substantially and irreparably harmed if Defendants are not enjoined from infringing the Asserted Patents.

63.     Plaintiff does not have an adequate remedy at law and is entitled to injunctive relief prohibiting Capricor from making, using, offering to sell, and/or selling within the United States, or importing into the United States, Deramiocel, before the expiration of the Asserted Patents.

64.     This case is exceptional, and Plaintiff is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants Capricor Therapeutics, Inc. and Capricor, Inc., and respectfully requests the following relief:

1.  A judgment that the '004, '560, and '722 Patents have been infringed and will be infringed by Defendants;

2.  An injunction enjoining each Defendant, its officers, agents, servants, employees, and those persons acting in active concert or participation with all or any of them from manufacturing, using, offering to sell, or selling Deramiocel within the United States, or importing Deramiocel into the United States, prior to the expiration of the '004, '560, and/or '722 Patents pursuant to 35 U.S.C. § 283;

3.  To the extent that Defendants have or will commercially manufacture, use, offer to sell, or sell Deramiocel within the United States, or import Deramiocel into the United States, prior to the expiration of any of the '004, '560, and/or '722 Patents, including any extensions, a judgment awarding Plaintiff damages adequate to compensate for the infringement pursuant to 35 U.S.C. § 284, in no event less than a reasonable royalty, together with prejudgment and post-judgment interest, and an accounting for any infringing acts not presented at trial;

4.  A judgment that this is an exceptional case and that Plaintiff be awarded its attorneys' fees incurred in this action pursuant to 35 U.S.C. § 285;

5.  Costs and expenses in this action; and

6.  Such other and further relief as the Court deems just and appropriate.

### JURY DEMAND

Plaintiff hereby demands a jury trial on all issues appropriately triable by a jury.

Dated: July 16, 2026

**FARNAN LLP**

OF COUNSEL:

_/s/ Michael J. Farnan_____
Brian E. Farnan (#4089)
Michael J. Farnan (#5165)

17

Elizabeth Stotland Weiswasser (pro hac vice forthcoming)
Natalie Kennedy (pro hac vice forthcoming)
Zhen Lin (pro hac vice forthcoming)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3243
eweiswasser@paulweiss.com

Christopher Pepe (pro hac vice forthcoming)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street NW
Washington, DC 20006
(202) 381-5036
cpepe@paulweiss.com

919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
bfarnan@farnanlaw.com

*Attorneys for Plaintiff*
*Mesoblast International Sàrl*